UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                    Criminal Case No. 12-CR-10324-GAO

CATALIN BUZEA,

Defendant

GOVERNMENT'S SENTENCING MEMORANDUM

The United States moves the Court to sentence Defendant Buzea to 12 months of

incarceration, 36 months of supervised release thereafter, $108,405 in restitution to the victims

identified in the PSR, forfeiture, and a $200 mandatory special assessment.

SENTENCING GUIDELINE CALCULATIONS

Consistent with the parties' plea agreement, the United States calculates the sentencing

guidelines the same as is set forth in the PSR, except that the United States calculates the base

offense level under U.S.S.G. § 2S1.1(a)(2) as level 16 rather than 18.  Plea Agreement ¶ 3.  This

is because the United States originally calculated the sum of money laundered as between

$70,000 and $120,000 rather than between $120,000 and $200,000.  *See* Plea Agreement ¶ 3(i);

PSR ¶ 35.  Although information provided by the victims indicates that the amount laundered

was in fact between $120,000 and $200,000, PSR ¶ 28, the United States nevertheless stands by

its agreement to argue that Mr. Buzea's sentence be calculated based upon a money-laundering

figure of $70,000 to $120,000.  Plea Agreement ¶ 3.  This concession is appropriate, given that

the two defendants with comparable criminal conduct, Zsolt Lendvai and Tamas Ringhoffer

(Criminal Nos. 12-CR-10112-GAO and 12-CR-10113-WGY), were also sentenced well below

their sentencing guideline ranges.[1]

With this two-level deviation from the PSR's guideline calculations, the United States would argue for a sentence consistent with a total offense level of 13, which is 12 to 18 months.

The Court might wonder why the United States is not recommending a downward departure under U.S.S.G. § 5K2.12 for Mr. Buzea's claim of coercion, *see* PSR at 19-20 (Def.'s Objection Nos. 3, 4), as it had recommended in the similar cases of Lendvai and Ringhoffer. After all, just like Lendvai and Ringhoffer, Mr. Buzea also claimed that he committed his crimes because he was threatened or assaulted by a co-conspirator. *See* PSR at 19-20 (Def.'s Objection Nos. 3, 4).

The United States recommends disparate treatment of Mr. Buzea solely because his claim of coercion is uncorroborated, whereas Lendvai's and Ringhoffer's claims of coercion were corroborated by each other and also by a third co-conspirator, Eniko Somodi.[2] As the United States cautioned in Lendvai's case: "Claims of coercion should be met with extreme skepticism. They are usually too easy to manufacture after capture and too difficult to prove or disprove." The United States cannot recommend a downward departure based on an uncorroborated claim of coercion.

If the Court, however, believes Mr. Buzea's claim of coercion, then the Court should consider giving him a lower sentence than the guidelines would otherwise call for.

---

[1] Although Lendvai and Ringhoffer were mutual co-conspirators, they were not co-conspirators with Defendant Buzea. To the best of the United States's understanding, Buzea was involved in a Internet car sales and money-laundering scheme that looked almost exactly like Lendvai's and Ringhoffer's, but was entirely separate.

[2] Lendvai's and Ringhoffer's claims of coercion do not corroborate Mr. Buzea's claims of coercion because, again, they were co-conspirators in a completely separate scheme. That said, the United States grants that Lendvai's and Ringhoffer's claims of coercion might lend credence to a claim that these schemes generally operate through coercion.

**SENTENCING RECOMMENDATION**

Sentencing Mr. Buzea to 12 months of imprisonment would be roughly consistent with the sentences handed down against Lendvai and Ringhoffer.  Lendvai was sentenced to 24 months after laundering more than $1.1 million jointly with a co-conspirator, whereas Ringhoffer was sentenced to 10 months (time-served) after laundering about $78,000 in proceeds by himself.  Mr. Buzea's situation is much closer to Ringhoffer's than to Lendvai's.

The Court should impose supervised release here even though the Court declined to do so for Lendvai.  The difference between Lendvai and Mr. Buzea is that Lendvai wanted to return to his homeland as soon as he could, whereas Mr. Buzea wants to remain in the United States. PSR ¶ 60.  If so, then supervised release would help ensure that Mr. Buzea's transition to life in the United States goes smoother than in his last try.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney


By:      */s/ Scott L. Garland*
Scott L. Garland
Assistant U.S. Attorney


**CERTIFICATE OF SERVICE**

I hereby certify that this document is being filed through the ECF system and therefore will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Scott L. Garland*
Scott L. Garland
Assistant U.S. Attorney

Date:February 11, 2013